**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CR-04-226-HE |
| ) | |
| CHARLES H. BRANCH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Defendant Charles H. Branch was convicted, following a jury trial, of thirteen counts of stealing government funds in violation of 18 U.S.C. § 641, in conjunction with his receipt of supplemental security income ("SSI") payments from the Social Security Administration.[1] He was sentenced to twelve months imprisonment on each of the thirteen counts, to be served concurrently, and ordered to pay $135,214.71 in restitution and a special assessment of $325.00. Branch appeals his convictions and sentence. The court has jurisdiction pursuant to 18 U.S.C. § 3402, Fed.R.Crim.P. 58(g)(2)(B),[2] and affirms the convictions but vacates the sentence and remands for resentencing.[3]

**Background**

---

[1] *The jury, in a bifurcated proceeding, determined the actual loss to the government to be between $70,000 and $120,000.*

[2] *The scope of the appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed.R.Crim.P. 58(g)(2)(D).*

[3] *Defendant consented to proceed before a United States Magistrate Judge, pursuant to Fed.R.Crim.P. 58(b)(2)(E)(ii).*

From approximately August 25, 1983, until February 1, 2002, Branch received supplemental security income payments ("SSI") from the Social Security Administration. The SSI program provides welfare-like assistance to disabled, blind or elderly individuals who cannot afford basic necessities such as food and shelter. Eligibility for the monthly payment is dependent on the individual's income. SSI recipients periodically have to demonstrate their continued eligibility for assistance, through a review process referred to as redetermination.[4]

Although Branch had been receiving workers' compensation benefits from the United States Department of Labor since 1972, on March 26, 1985, April 15, 1986, April 8, 1987, November 3, 1988, August 31, 1989, February 19, 1991, August 20, 1991, November 22, 1994, and April 25, 2000, he failed to inform the Social Security Administration of their receipt. Branch was subsequently charged by a misdemeanor information with thirteen counts of stealing and knowingly converting to his own use money from a United States agency. The counts were based on thirteen money transfers[5] between February 14, 2001, and February 1, 2002, from the Social Security Administration to the defendant's bank account, which the defendant knew he was not entitled to receive because of his concurrent receipt of workers' compensation benefits from the Department of Labor. On appeal Branch argues the evidence was insufficient to support his convictions and that he must be resentenced

---

[4]*The redeterminations are done face to face, over the telephone, or by mail.*

[5]*The transfers totaled $9,332.00  and the total loss calculated by the government -- the overpayments of supplemental security income benefits – was $135, 214.*

under United States v. Booker, 543 U.S. ___,  125 S. Ct. 738 (2005).

## Sufficiency of Evidence

The court reviews de novo the sufficiency of the evidence and will uphold a conviction if, "'taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" United States v. Sarracino, 131 F.3d 943, 946 (10th Cir. 1997) (quoting United States v. Floyd, 81 F.3d 1517, 1525 (10th Cir.1996)).  Branch contends the government failed to prove he possessed the requisite intent to violate § 681, as the evidence did not establish that he knew he was not entitled to SSI benefits because of his concurrent receipt of worker's compensaiton benefits.

Branch argues there was no direct proof that he was ever asked about, or failed to advise the SSA of, his other income, including workers' compensation benefits. The government introduced only one eligibility redetermination form that he had actually signed, dated April 25, 2000.  The Social Security Administration employee, Ardis Reichenberger, who assisted him in its completion, testified that Branch did not fill out the form.  Instead, he was asked the questions and Reichenberger input his answers.  She did not know if Branch had read the entire completed form before he signed it.[6]   Trial Tr. 32.

---

[6]*Ms. Reichenberger testified that the defendant would have been given the opportunity to review the document before he signed it. Trial Tr. 23-24, 28. While she could not specifically recall asking Branch all the questions on the redetermination form, Ms. Reichenberger testified that, based on her normal practice, she would have inquired about his income.  She stated that unless he had responded negatively to questions about all sources of income, the statement that "I do not receive any type of income" would not have appeared on the form. Trial Tr. 27, 30-31.  Evidence of the routine practice of an organization is relevant to show a consistent practice on a particular*

Branch testified that he did not try to hide his receipt of worker's compensation benefits and was unaware they would affect his eligibility for SSI benefits. He did not recall having provided false information about his income to the Social Security Administration in order to continue receiving SSI benefits. He did not believe he was asked, until 2002, about workers' compensation benefits, at which time he disclosed their receipt.

To obtain a conviction under § 641, the government must prove the defendant stole or knowingly converted to his use money belonging to a department or agency of the United States. The record amply supports the jury's verdict. In addition to the April 25, 2000, redetermination form, which Branch signed and which contained the statement "I do not receive any type of income," Gov. Exhibit 2, the government introduced a computer record of data regarding the defendant's destroyed initial application for SSI benefits and his redetermination forms.[7] Gov. Exhibit 7, Trial Tr. 52-60. The print-out included information about the prior forms, including their dates. *Id.* at 61-62. Blank forms that corresponded to the application and redetermination forms the defendant would have completed in 1983, 1985, 1989, and 1994 also were introduced. Trial Tr. 63-71. Each form required the applicant/SSI recipient to report any income. Three specifically mentioned workers' compensation benefits as a type of income that must be reported. Trial Tr. 66-71. Another Social Security Administration employee, Dan DeMoss, also testified that every

---

occasion. *Fed. R. Evid. 406. See Trial Tr. 22, 29-31, 81-82.*

[7]*Because of its record-destruction policies, the government was able to produce only one redetermination form Branch had actually executed.*

redetermination form that Branch completed would have required him to report his income. Trial Tr. 71. A reasonable jury could conclude beyond a reasonable doubt that the defendant knowingly failed to advise the SSA about his worker's compensation benefits, with the intent of stealing government funds.

### Sentencing

Bench asserts, and the government agrees, that the case should be remanded so the defendant may be resentenced in accordance with the standards announced by the Supreme Court in United States v. Booker.

### Conclusion

Accordingly, the court **AFFIRMS** Bench's convictions and remands the case for resentencing in light of Booker.

**IT IS SO ORDERED**.

Dated this 6th day of July, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE